**Martin THOM, Plaintiff,**

v.

**STATE FARM LLOYDS and State Farm Fire and Casualty Company, Defendants.**

**Civil Action No. H–97–0451.**

United States District Court, S.D. Texas, Houston Division.

Dec. 31, 1997.

---

Maxine Dachslager Goodman, Carrigan Lapin Landas Wilde, Houston, TX, for Martin Thom.

Jack M. McKinley, Glover Anderson Chandler and Uzick, Houston, TX, Henry Sim Platts, Jr., Chalker Bair, Houston, TX, for State Farm Lloyds, The State Farm Fire and Casualty Co.

Jack M. McKinley, Glover Anderson Chandler and Uzick, Houston, TX, for State Farm Lloyds.

Maxine Dachslager Goodman, Carrigan Lapin Landas Wilde, Houston, TX, for Martin Thom.

Fred W. Stumpf, Stumpf Falgout Craddock & Massey, Houston, TX, for Jose Simon, Jr.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This case is an action by an insured, Martin Thom ("Thom"), against his insurers, State Farm Lloyds and State Farm Fire and Casualty Company, seeking damages and a determination of the scope of coverage under two contracts of insurance, a homeowners policy and an umbrella policy, which for the purposes of this case have the same language. Plaintiff Thom seeks monetary damages under these insurance policies for economic losses arising from property damage allegedly associated with defects in the foundation of a residence that Plaintiff through his company, Caledonian Developments, Inc., constructed and sold to Jose Simon, Jr. ("Simon"), the Third–Party Defendant. Plaintiff also seeks a declaration that the State Farm entities have a duty to defend and indemnify Plaintiff against third-party claims by Simon in this regard.

Pending before the Court is Defendants State Farm Lloyds's and State Farm Fire and Casualty Company's (collectively referred to as "State Farm" in this Memorandum and Order[1] ) Motion for Summary Judgment [Doc. # 29] ("State Farm's Motion"). Both Plaintiff Martin Thom, and Third–Party Defendant Simon have responded in opposition. *See* Plaintiff Martin Thom's Response to State Farm's Motion for Summary Judgment and Motion for Leave to File Summary Judgment [Doc. # 31] ("Thom's Response"); Third Party Defendant Jose Simon, Jr.'s Response to State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. # 32] ("Simon's Response"). Based upon the reasons

---

1. Each insurer issued a separate policy and has separate duties.

stated below, State Farm's Motion is GRANTED.

## I. FACTUAL BACKGROUND

### A. The Underlying Lawsuit

On or about May 16, 1995, Simon sued State Farm's insured, Thom, in Cause No. 95–23429, styled as *Jose Simon, Jr. v. Martin Thom, et al.* At the time of submission of State Farm's Motion, the suit was pending in the 189th District Court of Harris County, Texas. Simon sought damages from Thom for common law fraud, violations of the Texas Business and Commerce Code regarding fraud in a real estate transaction, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and negligent misrepresentations in the sale of a house to Simon on January 12, 1993, pursuant to an earnest money contract, dated November 16, 1992, between Simon and Thom's now bankrupt corporation, Caledonian Developments, Inc. ("Caledonian"). *See generally* Jose Simon, Jr.'s First Amended Petition (Exhibit E to State Farm's Motion); Original Petition of Jose Simon, Jr. (Exhibit D to State Farm's Motion) ("Original Petition").

Caledonian owned, constructed, and sold the house to Simon that, Simon alleges, has foundation and related problems. According to Simon, Thom, the president of Caledonian, failed to disclose or affirmatively misrepresented these defects to Simon. *See generally* Original Petition; Jose Simon, Jr.'s First Amended Petition (Exhibit E to State Farm's Motion) ("First Amended Petition").

State Farm Lloyds insured Thom under Texas Homeowners Policy No. 53–N8–9679–0 for the period between May 2, 1993 to May 2, 1994. This policy contained personal liability coverage. *See* Texas Homeowners Policy, Declaration Page (Exhibit B to State Farm's Motion) ("Homeowners Policy"), at 1. The "Liability Coverage" section provides:

> If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable.
> 2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Homeowners Policy, at 9 (emphasis in original). State Farm Fire and Casualty Company insured Thom under personal liability umbrella policy No. 53–BC–8842–1 for the period between September 20, 1993 and September 20, 1994. *See* Personal Liability Umbrella Policy, Declaration Page (Exhibit C to State Farm's Motion) ("Umbrella Policy"), at 1. The Umbrella Policy provides that if the insured becomes "legally obligated to pay damages for a **loss**," the company will pay the net loss minus the retained limit. *See id.* at 3 (emphasis in original). "Loss" is defined as "an accident that results in **personal injury** or **property damage** during the policy period." *See id.* at 1 (emphasis in original).

According to State Farm, the insurance companies first received notice of the lawsuit and claim in May 1996, months after Simon filed his Original and First amended petitions. State Farm later received and reviewed Simon's Second Amended Petition in June 1996 while the companies were still conducting their initial investigation and evaluation of coverage. *See* State Farm's Motion, at 3. In the Second Amended Petition, Simon added co-defendant Gene Taylor d/b/a TCB Construction ("TCB") to the state court suit, and added a cause of action for negligence against TCB alone as a subcontractor of Caledonian in preparing the site and constructing the foundation of the house Simon would later purchase. *See* Jose Simon, Jr.'s Second Amended Petition (Exhibit F to State Farm's Motion) ("Second Amended Petition"), at ¶¶ 10, 32–35. After completing the initial investigation and coverage evaluation, State Farm denied a defense and indemnification to Thom for the allegations contained in Simon's Original, First, and Second Amended Petitions on August 2, 1996. *See* State Farm's Motion, at 4.

Subsequently, State Farm received a copy of Simon's *Third* Amended Petition in the

underlying lawsuit on January 2, 1997, which was filed on December 19, 1997. In that pleading, Simon for the first time asserted a cause of action for general negligence against Thom, in addition to the previously alleged claim of negligent misrepresentation, and claimed that his damages did not arise out of or in connection with Thom's or Caledonian's business.[2] *See* Jose Simon, Jr.'s Third Amended Petition (Exhibit G to State Farm's Motion) ("Third Amended Petition"), at ¶¶ 32–37. According to State Farm, these new allegations are nothing more that "an attempt to foster non-existent coverage for a clear business liability under the personal liability policies issued to Thom by State Farm." *See* State Farm's Motion, at 4.

State Farm then agreed to provide a defense to Thom for Simon's Third Amended Petition in the state court suit with a reservation of right to deny coverage later under the policies issued to Thom. State Farm apparently asserted multiple reasons for their reservation of right, many of which State Farm now asserts as grounds for summary judgment.

### B. *The Case at Bar*

Meanwhile, Thom brought this suit against the State Farm entities in state court on December 19, 1996. *See* Supplement to Notice of Removal, Plaintiff's Original Petition and Request for Declaratory Relief [Doc. # 19] ("Thom's Petition"). Thom asserted causes of action against State Farm for: breach of duty of good faith and fair dealing; violations of the DTPA (Tex.Bus. & Com. Code Ann. § 17.41 *et seq.* (Vernon 1987)); negligence; breach of contract; and violations of the Texas Insurance Code (Tex.Ins. Code Ann. art. 21.21, § 16 (Vernon 1981)). *See id.* at §§ III–VII. Thom also requested a declaration that State Farm has a duty to defend and indemnify Thom in the underlying lawsuit pursuant to Tex.Civ.Prac. & Rem. Code Ann. ch. 37 (Vernon 1986). These causes of action are based on allegations that "[d]espite Thom's demand and State Farm's express obligation to defend and indemnify, State Farm refused and continues to refuse to defend and indemnify under the policies." Thom's Petition, at § II.

State Farm removed Thom's action to this Court on February 13, 1997, based upon diversity of citizenship. *See* Notice of Removal [Doc. # 1]. On March 4, 1997, State Farm filed a Counterclaim against Thom, seeking to have the Court declare that Thom is not entitled to coverage for the allegations made against him in the underlying lawsuit under either of the State Farm policies, and requesting attorneys' fees, expenses, and costs. *See* Defendants' Counterclaim [Doc. # 8], at 6. On June 4, 1997, State Farm filed a Third–Party Complaint against Simon, seeking a declaration that Thom and Simon (as potential third-party beneficiary) are not entitled to coverage for Simon's allegations against Thom in the underlying lawsuit under either policy, and requesting recovery of attorneys fees, costs, and expenses "given the blatant and false coverage-seeking allegations by Simon in his Third Amended Petition filed in the underlying state court tort-suit." [3] State Farm Lloyds and State Farm Fire and Casualty Company's Third Party Complaint Against Jose Simon, Jr. [Doc. # 17] ("Third Party Complaint"), at 6.

On September 10, 1997, State Farm moved for summary judgment on Thom's claims as well as on the Counterclaim and Third–Party claim, requesting that the Court "declare that defendants owe no coverage to plaintiff as insured or to third party defendant as potential judgment creditor of plaintiff, award defendants their attorneys fees, expenses and court costs in this suit against plaintiff and third party defendant, jointly and severally, and for such other relief to which defendants may be entitled in the interest of judgment." State Farm's Motion, at 25.

### II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether

---

2. The pertinent allegations in the Third Amended Petition, § 36, at 8, are quoted *infra* at Part III.B.1.

3. The Court denied Thom's Motion to Dismiss Defendants' Counterclaim [Doc. # 11], and Simon's Motion to Dismiss Third Party Complaint [Doc. # 26]. *See* Doc. # 18; Doc. # 30.

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *See Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995) (citation omitted); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *see also Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting) (if moving party will bear burden of persuasion at trial, that party must support its motion with credible evidence, using any of materials specified in Fed.R.Civ.Pro. 56(c), that would entitle it to directed verdict if not controverted at trial; such an affirmative showing shifts burden of production to nonmoving party and requires that party either to produce evidentiary materials that demonstrate the existence of "genuine issue" for trial or to submit an affidavit requesting additional time for discovery). If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *See Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994).

The nonmovant's burden may not be satisfied by conclusory allegations. unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *See Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. Dispute about a material fact is genuine only if evidence is such that reasonable jury could return a verdict for nonmoving party. *Stafford v. True Temper Sports*, 123 F.3d 291, 294 (5th Cir.1997); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992). In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. *DISCUSSION*

State Farm moves for summary judgment, arguing that "there are no facts in dispute regarding any of four independent grounds for a judgment of no coverage, and thus Thom has no valid cause of action for damages based on State Farm's initial and correct refusal to defend or indemnify him, as a matter of law." State Farm's Motion, at 5. Those grounds for a finding of no coverage are: (1) the "business" exclusions in both policies; (2) Simon does not seek damages for "bodily injury," "personal injury," or "property damage" caused by an "occur-

rence" or "accident" as defined by the policies; (3) the underlying lawsuit seeks damages for non-covered contractual liability; and (4) the policies were issued after the alleged wrongful conduct occurred. *See* State Farm's Motion, at 5. Both Thom and Simon contest these allegations. The Court finds that State Farm has no duty to defend or indemnify Thom under the policies' business exclusions, and therefore does not reach the additional grounds asserted by Defendants.

### A. *Texas Insurance Law*

■ In determining an insurer's duty to defend an insured against third-party claims, Texas applies the "eight corners rule," which provides that Texas courts " 'look only to the pleadings and the insurance policy to determine whether the duty to defend exists.' " *Nautilus Ins. Co. v. Zamora*, 114 F.3d 536, 538 (5th Cir.1997) (quoting *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App.—Dallas 1993), *writ ref'd per curiam*, 889 S.W.2d 266 (Tex.1994)); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex.1994). Courts must liberally construe the allegations of the pleadings, and any doubt concerning coverage is resolved in favor of the insured. *See Nautilus*, 114 F.3d at 538; *Cullen/Frost*, 852 S.W.2d at 255. The duty to defend is determined by consulting the latest amended pleading upon which the insurer based its refusal to defend. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983)).

■ "Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend. Instead, they look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight corners of the complaint, constitute a claim potentially within the insurance coverage."

*Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997) (citing *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673 (Tex.App.—Houston 1993, writ denied)). When reviewing the underlying pleadings, the court must focus on the factual allegations indicating the origin of the damages instead of the legal theories alleged. *See National Union Fire Ins. Co.*, 939 S.W.2d at 141; *Adamo*, 853 S.W.2d at 676. It is not appropriate to consider facts verified before the suit, developed in the process of the litigation, or determined by the ultimate outcome of the suit. *See Canutillo*, 99 F.3d at 701 (citations omitted).

■ "When terms of an insurance policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense." *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987) (internal quotations and citation omitted). Where an ambiguity exists, however, courts must give the petition the most liberal reading possible, resolving all legitimate doubts in favor of coverage. *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 394 (5th Cir.1995) (citations omitted).

■ Thus, the duty to defend arises only when the facts alleged in the complaint, if taken as true, would potentially state a cause of action falling within the terms of the policy. *Canutillo*, 99 F.3d at 701. The insurer is obligated to defend provided that the petition or complaint alleged at least one cause of action within the policy's coverage. *See Canutillo*, 99 F.3d at 701 (citing *Rhodes*, 719 F.2d at 119). Although the insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage, the insurer bears the burden of showing that a policy exclusion allows the insurer to avoid coverage. *See Canutillo*, 99 F.3d at 701.

■ The duties to defend and to indemnify are distinct and separate duties. *See Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997); *Trinity Uni-*

*versal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997). "In contrast to the duty to defend, the duty to indemnify is not based on the third party's allegations, but upon the actual facts that underlie the cause of action." *Canutillo,* 99 F.3d at 701 (citations omitted). An insurer may initially have a duty to defend but, eventually, no duty to indemnify. *See Farmers Texas County Mut.,* 955 S.W.2d at 82. The reasons that negate a duty to defend, however, will negate any possibility that the insurer will ever have a duty to indemnify. *See id.* at 84.

### B. Analysis

### 1. Duties to Defend and Indemnify: The Business Exclusion

State Farm argues that Simon's factual allegations in the underlying lawsuit show that his injury arose out of or in connection with a "business" engaged in by Thom, are due to Thom's "business" operations, and are thus excluded from coverage under the policies.[4]

Both Thom and Simon counter that the business exclusions do not apply to the case at bar. Thom argues that since the facts alleged by Simon may fall outside the business exclusion because Simon's allegations are against Thom both "for Caledonian" and "individually," this basis for summary judgment must fail. *See* Thom's Response, at ¶¶ 6–9. Simon claims that the exclusion does not apply because Thom's actions did not fall within "a business engaged in by an insured." *See* Simon's Response, at 3–5.

In Simon's Third Amended Petition, Thom is sued individually. *See* Third Amended Petition, at 1. The petition alleges that both Simon and Caledonian entered into a written contract, and that Simon's claims and causes of action arise out of or are related to Thom's misrepresentations in connection with that contract. *See id.* at 1–2. Simon maintains that Thom was president of Caledonian when the house was constructed and the contract was formed, and that Thom "personally represented" that the house had been completed according to specification. *See id.* at 2. According to Simon, Thom is liable for the acts and omissions of Caledonian and in his individual capacity. *See id.* at 4. Under the caption "Negligence by Thom," Simon asserts that

> As an agent of Caledonia[n], Thom's trade was the construction of residential homes. It was not his trade, profession or occupation to design and build residential foundations. Therefore Thom's failure to assure that the foundation was properly built was an act of negligence that did not arise out of or in connection with his business or the business of Caledonia[n]. Because this injury arose out of acts that were not connected to the business of Thom or Caledonia[n], Thom is individually liable for the damages ca[u]sed thereby.

Third Amended Petition, ¶ 36, at 8.

 Exceptions and limitations in a policy are strictly construed against the insurer. *See Canutillo,* 99 F.3d at 701. Therefore, courts must "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (internal quotations and citation omitted). These special rules that favor insureds, however, are only applicable when there exists an ambiguity in the policy. *Id.* When the exclusion in question is susceptible of only one reasonable construction, the rules do not apply. *Id.* In the present case, the Court holds that the business exclusion is not ambiguous.[5]

---

**4.** The Homeowners Policy excepts from coverage "*bodily injury* or *property damage* arising out of or in connection with a *business* engaged in by an *insured.*" Homeowners Policy, at 9 (emphasis in original). Similarly, the Umbrella Policy does not insure "for any loss caused by [the insured's] **business operations** or arising out of **business property.**" Umbrella Policy, at 4 (emphasis in original). "Business" is defined in both policies as including "trade, profession or occupation." Homeowners Policy, at 1; Umbrella Policy, at 1.

**5.** Simon's reliance on *State Farm Fire & Casualty Co. v. Reed,* 873 S.W.2d 698 (Tex.1993), and *Vaughan v. State Farm Lloyds,* 950 S.W.2d 205 (Tex.App.—Houston [14th Dist.] 1997, writ requested) for the proposition that the homeowners policy business exclusion has been held to be ambiguous is misplaced. Those cases addressed

This Court must focus on the factual allegations indicating the origin of the damages rather than the legal theories alleged. *See National Union Fire Ins. Co.*, 939 S.W.2d at 141. The relevant inquiry under the policy is whether Simon's damages "arose out of or in connection with" Thom's business. *See supra* note 4. The thrust of Simon's claims is that the soil, foundation, and house did not conform to the plans and specifications as represented by Defendant Thom, that Thom failed to assure that the foundation was properly built, and that Simon consequently suffered damages.

■ Under the language of the policies and the facts as alleged by Simon, the Court finds that Simon's damages arose "out of or in connection with" Thom's trade, as Simon alleged in the Third Amended Petition: the construction of residential homes. Simon's damages arose out of or in connection with his purchase of the house from Thom through Caledonian. Thom supervised construction (including the foundation) and negotiated the sale with Simon in his capacity as president of Caledonian. But for Thom's alleged misrepresentations and alleged negligence before and during construction and sale of the home for Caledonian, Simon's damages would not have occurred. That Simon seeks to impose liability on Thom as an individual is legally insignificant. Even if

Thom is personally liable and the negligence claim is viable, any negligent supervision would still occur as a consequence of Thom's business activities with Caledonian.

Simon and Thom attempt to circumvent the unambiguous business exclusions in the policies by pointing to language in the Third Amended Complaint stating that Thom's business was constructing and selling homes, not pouring foundations. The facts as alleged in the underlying petition allege that "Thom's trade was the construction of residential homes" and that it was not his "trade, profession or occupation to design and build residential foundations." [6] *See* Third Amended Petition, at 8. These attempts are unavailing. One cannot construct a home without building a foundation. Construction of a sound residential home subsumes assurance of a proper foundation for the home.[7] It is thus illogical, if not nonsensical, to argue on the one hand that Thom's trade was the construction of residential homes, and on the other hand that Thom's failure to assure that the foundation was properly built did not arise out of or in connection with Thom's business or the business of Caledonian.[8]

Furthermore, "[w]here the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered...." *Canutillo*, 99

an exception to the homeowners policy business exclusion for activities ordinarily incidental to non-business pursuits in the context of paid child care, and are factually distinct.

Even if the exclusion were ambiguous, the Court finds Thom's construction unreasonable, and therefore those rules favoring the insured's constructions would not apply.

6. Simon also contends that Thom's failure to assure the foundation was properly built was an act of negligence that did not arise out of or in connection with Thom's business or the business of Caledonian. This is a conclusory allegation that is nothing more than an argument on a "legal theory." It should therefore not be considered in reviewing the underlying pleadings. *See National Union Fire Ins. Co.*, 939 S.W.2d at 141. The Court concludes that the negligence allegation is not material to the legal issue before the Court.

7. As State Farm points out, the inquiry must be whether Simon's *damages arose out of or in connection* with Thom's business, which is a much

broader inquiry than whether Thom's *actions* fell within the business in which Thom was engaged "when those actions are broken down into the smallest possible constituent parts, as Thom and Simon appear to claim." State Farm's Reply, at 2.

8. Nor is it logical to assert that Thom owed Simon a duty of reasonable care in supervising the construction of the foundation and ensuring that the foundation was properly built, and then to further maintain that Thom's alleged failure to ensure that the foundation was properly constructed did not arise out of or in connection with Thom's business or the business of Caledonian. *See* Third Amended Petition, at 8.

Thom's attempt to distinguish between the business of Caledonian and the business of Thom, and argument that the allegations against Thom are both "for Caledonian" and "individually" further is rendered unpersuasive in light of Simon's claim in the Third Amended Petition that the two were "alter egos." *See* Thom's Response, at ¶ 8; Third Amended Petition, at 9.

F.3d at 704–705. The negligence claim against Thom, even if not construed as arising out of or in connection with a business engaged in by Thom, is nevertheless related to and dependent upon the policies' exclusions: injury, damage, or loss related to an insured's business operations.

These arguments amount to nothing more than an attempt at artful pleading. They do not suffice to place Thom's claims potentially within the policies' coverage. *See Canutillo,* 99 F.3d at 701. The Court cannot leave its common sense at the courthouse door.

■■■■■ Because the petition does not meaningfully allege facts that are within the scope of coverage, State Farm is not legally required to defend, or indemnify. *See Farmers Texas County Mutual,* 955 S.W.2d at 82. As there are no material facts in dispute regarding a finding of no coverage based on the "business exclusion" provisions, summary judgment on this ground must be granted.[9]

### 2. Thom's Claims for Damages Against State Farm

■■■■■ Because there is no coverage, duty to defend, nor requirement of indemnification, Thom's claims for damages against State Farm must likewise fail. Thom's asserted causes of action against State Farm for breach of duty of good faith and fair dealing, violations of the DTPA, negligence, breach of contract, and violations of the Texas Insurance Code (Tex.Ins.Code Ann. art. 21.21, § 16 (Vernon 1981)). *See id.* at §§ III–VII.[10] Because Thom's causes of action against State Farm are based upon alleged wrongful denials of defense and indemnification, and because the Court finds that State Farm's denials were justified, Thom's causes of action against State Farm necessarily must fail.[11]

---

**9.** State Farm's second basis for summary judgment is two-pronged: (i) Simon's damages did not result from "property damage," and (ii) the damages were not caused by an "accident" as required by the policies. *See* State Farm's Motion, at 13–19. The Homeowners Policy covers such damage when caused by an "occurrence," which is defined as "an accident, including exposure to conditions, which results *bodily injury* or *property damage* during the policy period." *See* Homeowners Policy, at 9; *id.* at 1 (emphasis in original). The Umbrella Policy provides coverage for a "loss," which is defined as "an accident that results in **personal injury** or **property damage** during the policy period." Umbrella Policy, at 3; *id.* at 1 (emphasis in original).

The Court finds the "property damage" argument entirely unpersuasive although the Court concurs with State Farm that the intentional misrepresentation claims cannot be construed as an accident within the meaning of the policies, *see State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 738 (Tex.App.—Ft. Worth 1996, writ denied), the negligent misrepresentation and negligence claims could potentially qualify as an "accident" for the purposes of coverage. Texas courts have held that intentional misrepresentations are not accidents or occurrences for the purposes of insurance policies because they are made intentionally and with the intent to defraud, and are thus not accidental. *See Aetna Cas. & Sur. Co. v. Metropolitan Baptist Church,* 967 F.Supp. 217, 223 (S.D.Tex.1996); *see, e.g., Kessler,* 932 S.W.2d at 738; *Houston Petroleum Co. v.. Highlands Ins. Co.,* 830 S.W.2d 153, 156 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *see also Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124, 1128 (5th Cir.1993). Thus, Simon's claims against Thom, to the extent that they are based

upon intentional misrepresentations by Thom, would not constitute accidents or occurrences under the State Farm policies. At least one court, however, has held that negligent misrepresentation—one of Simon's claims against Thom—is an "occurrence" under Texas law. *See Metropolitan Baptist Church,* 967 F.Supp. at 224. Moreover, under Texas law, an "accident" includes the "negligent acts of the insured causing damage which is undesigned and unexpected." *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 400–401 (Tex. 1967); *see Cowan,* 945 S.W.2d at 828. Nevertheless, the Court has reservations regarding whether Thom's claims of negligent misrepresentation and negligence in failing to ensure construction of a proper foundation should be construed as an accident or occurrence under the policies. The Court does not reach this open issue in granting summary judgment in favor of State Farm. *Cf. Griffin,* 955 S.W.2d at 84 (judgment based on negligent conduct often triggers duty to indemnify).

**10.** Thom also requested a declaration that State Farm has a duty to defend and indemnify Thom in the underlying lawsuit pursuant to Tex Civ Prac. & Rem.Code Ann. ch. 37 (Vernon 1986).

**11.** Regarding the duty of good faith and fair dealing, the Texas Supreme Court has held that a liability insurer does not owe a duty of good faith and fair dealing to investigate and defend claims by a third party against its insured. *See Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc.,* 938 S.W.2d 27, 27–29 (Tex.1996). Thus, Thom cannot recover on his allegations that State Farm breached this nonexistent duty. Fur-

### 3. Appropriateness of Judgment

■ Thom argues that State Farm's request for declaratory judgment on the indemnification issue is premature, because "[a]ny determination of an insurer's duty to pay is hypothetical before judgment is granted against the insured." Thom's Response, at ¶ 12; *see JEM. v. Fidelity & Cas. Co. of New York*, 928 S.W.2d 668, 671 (Tex.App.—Houston [1st Dist.] 1996, n.w.h.). The Texas Supreme Court has recently announced, however, that the "duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Griffin*, 955 S.W.2d at 84.

### 4. Award of Attorney's Fees

■ State Farm requests recovery of attorneys fees in the present action from Thom and Simon, jointly and severally, because their position in this suit is "nonsensical, specious, fatuous, and frivolous" and because they have forced State Farm to defend these claims. State Farm's Motion, at 24–25.[12]

Thom replies that no fees should be assessed against him because he sought coverage long before Simon filed his Third Amended Petition, and Thom has no control over Simon's pleadings. *See* Thom's Response, at ¶ 16. Simon likewise contests an award of attorneys fees in this case, arguing,

*inter alia*, that he was justified in taking a contrary position given the fact that the business exclusion has been held to be ambiguous.[13] *See* Simon's Response, at 8–9.

The Court declines to award attorneys' fees in this case. The issues here required a judicial ruling and the interests of justice are not served by an award of fees or expenses. State Farm is, however, entitled to recovery of its costs of court. *See* 28 U.S.C. §§ 1920, 1924 (1994).

## IV. CONCLUSION

Based on the reasons above, the Court finds that State Farm's Motion for Summary Judgment should be granted. It is therefore

**ORDERED** that:

1. State Farm Lloyds and State Farm Fire Insurance Casualty Company owe no duty to defend or indemnify Thom as insured in the underlying lawsuit.

2. State Farm Lloyds and State Farm Fire Insurance Casualty Company owe no obligations to Simon as potential judgment creditor of Thom.

It is further

**ORDERED** that State Farm Lloyds and State Farm Fire Insurance Casualty Company's Motion for Summary Judgment [Doc. # 29] on the claims asserted by Thom, and on the Counterclaim [Doc. # 8] and Third–Party Complaint [Doc. # 17] are **GRANTED.** It is further

---

thermore, because the Court finds there is no duty to defend or indemnify, Thom cannot recover damages on his allegation of breach of contract because there is no coverage afforded by the policies State Farm issued.

Although Thom alleges causes of action against State Farm for negligence and gross negligence, Texas recognizes only one tort duty in the context of investigating and defending claims by a third party against an insured, the *Stowers* duty. *See Maryland Ins. Co.*, 938 S.W.2d at 28. The *Stowers* duty is the "duty of an insurer to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits." *See American Physicians Ins. Exch.*, 876 S.W.2d at 843 n. 2. Thom has alleged no facts that State Farm breached the *Stowers* duty by failing to accept a reasonable settlement demand within the scope of coverage. Thus, Thom's tort claims must fail.

Thom also asserts violations of the DTPA and the Texas Insurance Code incident to State Farm's alleged wrongful refusals to defend and indemnify. Because the Court finds that the claims alleged did not fall under coverage, and that State Farm therefore had no duties to defend or indemnify as a matter of law, the DTPA and Insurance Code claims cannot be supported.

**12.** State Farm cites *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88 (5th Cir.1994). In *Gulf States*, however, although the defendant questioned whether the district court abused its discretion in awarding attorneys fees, the defendant did not brief the issue on appeal, and the Fifth Circuit therefore did not consider it. *See id.* at 89.

**13.** Reliance on this interpretation is not justified, however. *See supra* note 5.

**ORDERED** that State Farm's request for attorneys fees and costs is **DENIED.**[14]

---

**14.** Thom's Motion for Leave to File Summary Judgment [Doc. # 31] is rendered moot by this Memorandum and Order.