NO. 07-10-0490-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 13, 2011
_____

ALLEN BUTLER CONSTRUCTION, INC., APPELLANT

V.

AMERICAN ECONOMY INSURANCE COMPANY, APPELLEE
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-548,665; HONORABLE WILLIAM C. SOWDER, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Allen Butler Construction, Inc. (ABC), appeals from entry of summary judgment in favor of Appellee, American Economy Insurance Company (AEIC), in ABC's action seeking to collect damages for negligent construction on a commercial general liability policy issued by AEIC to DHD Concrete, LLC (DHD). In two issues, ABC asserts the trial court erred in granting AEIC's cross-motion for summary judgment because ABC established as a matter of law that insurance coverage exists for ABC's claim. We affirm.

## Background

In June 2007, the City of Lubbock (City) entered into a contract with Lee Lewis Construction (LLC) to build Phase I of the Lubbock Youth Sports Complex (the "project"). LLC, in turn, entered into a subcontract with ABC to handle site clearing, excavation, grading, paving, sidewalks and concrete pads for the project.[1] Similarly, ABC entered into a subcontract with DHD to construct the concrete apron and sidewalks.

The ABC subcontract with DHD required, among other things, that DHD's work be free from defects and conform to the project's plans. The subcontract also required that DHD procure a commercial general liability policy naming ABC as an additional insured. In compliance with that provision, DHD procured Commercial General Liability Policy No. 02-CE-158341-2 from AEIC[2] (the "policy").[3]

In March 2008, DHD began work on the concrete apron and sidewalks. In September 2008, the City discovered that the concrete apron, poured by DHD, was cracking[4] and the rebar was at the bottom of the apron rather than in the center as required by the project plans. The City's concerns were passed down to the responsible

---

[1]The project's concrete work included four "quads" with each quad consisting of four sports fields with a concession stand in the middle, an "apron" of concrete surrounding the concession stand, and concrete sidewalks leading from the apron to each sports field.

[2]The policy was originally procured from Safeco Insurance; however, Safeco subsequently changed its name to AEIC. For consistency, we will refer to Safeco as AEIC throughout the remainder of this opinion.

[3]The policy provides that AEIC has "the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage.'" The policy defines a "suit" as a civil proceeding wherein "bodily injury" and "property damage" are alleged. In the event of a "suit," the policy requires that the insured "[i]mmediately send [AEIC] copies of any demands, notices, summonses or legal papers received."

[4]The City contended the cracks were structural while DHD believed the cracks were cosmetic.

party and in a letter from ABC to LLC dated October 2, 2008, ABC acknowledged DHD had incorrectly installed rebar in the apron for quad one and offered a full refund in lieu of removing the concrete paving to correct the situation. Four days later, on October 6, ABC sent a second letter to LLC admitting DHD incorrectly installed rebar in the concrete apron for all four quads and proposed a refund of $6.00 per square foot or $281,808.00 in lieu of replacing the concrete. ABC also offered to grout and seal all cracks in the concrete.

Within a week to ten days, the City responded to ABC's offer by demanding that the concrete paving in all four quads be removed and that the apron be replaced. Thereafter, ABC waited for optimal weather conditions before replacing the apron. In December, DHD agreed to pay ABC $2,000 a week to cover the cost of the apron's replacement.[5]

In January 2009, ABC began tearing out and replacing the apron using DHD's services. This process was completed in March. On January 21, DHD gave AEIC notice of ABC's claim against it for the defective concrete.[6] In a letter dated February 4,

---

[5]On deposition, DHD's owner testified that ABC was responsible for the sunken rebar because ABC would not approve concrete pump trucks for the project due to the increased cost. He testified regular concrete trucks had to drive over the rebar to complete pouring in each quad and, as they did so, crushed the "chairs" used to suspend the rebar in the concrete pads. For the replacement pour, he testified concrete pump trucks were used.

[6]Claim No. 411642093015 (Claim). AEIC's awareness of a claim against DHD did not impose a duty on it to defend under the Policy. *See Jenkins v. State*, 287 S.W.3d 891, 896 (Tex.App.—Fort Worth 2009, pet. denied) (citing *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 605 (Tex. 2008)). An insurer has no unilateral duty to act until an insured first requests a defense by notifying the insurer that [he or she] has been served with process and the insurer is expected to answer on [his or her] behalf." *Id.*; *Hardesty Builders, Inc. v. Mid-Continent Casualty Co.*, No. C-10-142, 2010 U.S. Dist. LEXIS 131464 at *15 (S.D.Tex. December 13, 2010) (a duty to defend does not arise until a petition alleging a potentially covered claim is tendered to the insurer). "One of the purposes of a notice of suit provision in an insurance policy is to notify the insurer that the insured has been served with process and that the insurer is expected to defend the suit." *Id.* at *14-15 (quoting *Harwell v. State Farm Auto. Ins. Co.,* 896 S.W.2d 170, 173-174 (Tex. 1995)).

AEIC responded that it was still investigating DHD's claim and asked for additional information. In late February, AEIC denied DHD's claim.

In a letter dated March 4, ABC, as an additional insured on DHD's policy, requested a defense and indemnification from AEIC for a claim by the City and LLC for DHD's concrete services "that were performed negligently or not in conformity with standard construction practices."[7] ABC sought reimbursement for the cost of removing and then replacing the concrete apron, $300,000. In a letter dated March 12, AEIC responded that it understood that no lawsuit had been filed and requested information regarding the claim and any information regarding any lawsuit. In a letter dated April 15, AEIC denied ABC's request for coverage citing several policy exclusions.

On August 18, ABC filed suit against DHD, AEIC and Bituminous.[8] DHD did not file an answer[9] and, on October 30, ABC took a default judgment against DHD. The trial court's *Final Default Judgment* found, in part, that: (1) ABC made a demand for payment from DHD on or about March 19, 2009, (2) DHD failed to perform its work in a good and workmanlike manner, (3) DHD's work was not complete when the defect in its work was discovered, and (4) DHD breached its contract with ABC, breached its warranty to ABC, was negligent in its construction of the aprons and proximately caused damages to ABC of $332,378.57. The trial court awarded ABC $332,378.57 in

---

[7]There is no evidence ABC tendered to AEIC any petition evidencing a legal proceeding.

[8]Bituminous was ABC's insurance carrier. ABC and Bituminous ultimately reached a settlement of their claims and Bituminous non-suited its cross-claim against AEIC.

[9]There is no evidence DHD renewed its prior request for a defense and/or forwarded a copy of any pleading requesting that AEIC answer on its behalf. Thus, there is no evidence AEIC was required to defend DHD against ABC under the policy. *See Jenkins*, 287 S.W.3d at 896-97.

replacement costs, prejudgment interest of $3,277.80, and attorney's fees of $1,500.00 for a total of $337,156.37 in damages. On December 18, 2009, ABC acquired any claims belonging to DHD in ABC's suit against AEIC through a turnover order.[10]

In April 2010, ABC filed its *First Amended Original Petition* against AEIC and Bituminous seeking to recover damages awarded by the default judgment alleging that both insurers failed to defend and indemnify DHD and ABC, as an additional insured. ABC and AEIC subsequently filed cross motions for summary judgment.[11] In November, the trial court granted AEIC's motion, denied ABC's motion and entered its final judgment in favor of AEIC. This appeal followed.

## Discussion

ABC asserts the trial court erred by granting summary judgment in AEIC's favor because ABC established, as a matter of law, that ABC and DHD met all conditions precedent to establishing coverage for DHD's allegedly defective work on the project and AEIC breached its contract by failing to defend and indemnify ABC and/or DHD.[12]

**Standard of Review**

We review the trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only if the movant establishes there is no genuine issue of material fact and that the

---

[10] *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2008).

[11] AEIC filed a traditional motion for summary judgment.

[12] In the summary judgment proceedings, AEIC assumed, without conceding, that ABC was an additional insured.

movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2003). In our review of a trial court's grant of summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett,* 164 S.W.3d at 661; *Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).

A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense; *Frost Nat. Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex. 2010); *Sci. Spectrum Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997),[13] and the trial court is required to grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. Tex. R. Civ. P. 166a(b). Moreover, if, as here, a trial court's granting of summary judgment does not specify the basis for the trial court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Joe v. Two Thirty Nine JV,* 145 S.W.3d 150, 157 (Tex. 2004).

An insurer's claimed exception to coverage constitutes an avoidance or an affirmative defense. *See* Tex. Ins. Code Ann. § 554.002 (West 2009). Although an insured bears the initial burden of showing there is coverage under an insurance policy, the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage. *Venture Encoding Service, Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d

---

[13]A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

729, 733 (Tex.App.—Fort Worth 2003, pet. denied).  When the insurer proves the applicability of an exclusion; Tex. Ins. Code Ann. § 554.002 (West 2009), the burden then shifts to the insured who must demonstrate that coverage exists under an exception to the exclusion.  *Venture Encoding Service, Inc.*, 107 S.W.3d at 733.

### Voluntary Assumption Provision[14]

Section IV.2.d., the "voluntary assumption provision," also known as the "consent-to-settlement provision,"[15] requires that an insured give prompt notice of a proposed settlement and/or tender a proposed settlement to the insurer before entering into any settlement with a claimant.  *See Motiva Enterprises Co. v. St. Paul Fire and Marine Ins. Co.,* 445 F.3d 381, 383 n.1 (5th Cir. 2006) (interpreting Texas law); *Maryland Casualty Co. v. American Home Assurance Co.,* 277 S.W.3d 107, 110, 113 (Tex.App.—Houston [1st Dist.] 2009, no pet.).  If an insured breaches this provision by settling an underlying claim or liability case without the insurer's consent and the insurer is prejudiced thereby, coverage will be denied.  *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 693-94 (Tex. 1994); *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.,*

---

[14]The Policy states, in pertinent part, as follows:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit

\* \* \*

d.  *No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

(Emphasis added).

[15]Although AEIC refers to the involuntary assumption provision as a condition precedent, "these provisions are properly construed as covenants and not conditions precedent."  *See Maryland Casualty Co.*, 277 S.W.3d at 113 n.2 (citing *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636 (Tex. 2008) (stating that "[c]onditions are not favored in the law" and that "when another reasonable reading that would avoid a forfeiture is available, [a court] must construe contract language as a covenant rather than a condition")).

218 S.W.3d 279, 295 (Tex.App.—Houston [14th Dist.] 2007, pet. denied). By demanding that an insurer prove prejudice, Texas law recognizes that only a material breach of this provision excuses performance. *See Hernandez,* 875 S.W.2d at 693.

ABC does not seriously dispute AEIC's contention that DHD and ABC breached the policy's voluntary assumption provision.[16] Rather, ABC contends that any failure to adhere to the provision's terms is excused because neither ABC's nor DHD's actions prejudiced AEIC. Having reviewed the summary judgment record, we find that AEIC established prejudice as a matter of law.

Section I.1.a. of the policy gave AEIC the unfettered discretion to settle any claim or suit[17] and Section IV.2.c.(3) required its insured to "[c]ooperate with [AEIC] in the . . . settlement of the claim." In *Motiva,* the United States Court of Appeals for the Fifth

---

[16]Although ABC asserts that it did not assume responsibility for DHD's negligence because a demand was made upon ABC by the City and LLC, ABC fails to cite any legal authority for the proposition that an insured cannot assume an obligation for an insurable act because a demand is made by a third-party. Accordingly, this assertion was waived. Tex. R. App. P. 38.1. *See Morrill v. Cisek*, 226 S.W.3d 545, 548-49 (Tex.App.—Houston [1st Dist.] 2006, no pet.); *Kosowska v. Kahn*, 929 S.W.2d 505, 508-09 (Tex.App.—San Antonio 1996, writ denied). Further, the record reflects that ABC assumed the obligation of correcting DHD's negligent work and incurred the expense of replacing the concrete aprons by admitting liability to LLC in October 2008 and reaching a settlement with LLC and the City whereby DHD, at ABC's behest, subsequently tore out the concrete pads and replaced the aprons in all four quads at ABC's and DHD's expense. There is no summary judgment evidence to the contrary.

[17]The Policy states, in pertinent part, as follows:

SECTION I. – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

 1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage"' to which this insurance applies . . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. *We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*

(Emphasis added).

Circuit concluded that "[w]hen . . . the insurer is not consulted about the settlement, the settlement is not tendered to it [,] and the insurer has no opportunity to participate in or consent to the ultimate settlement decision . . . the insurer is prejudiced as a matter of law." *Motiva*, 445 F.3d at 386. This result is required in consent-to-settle exclusion cases because "[a]n insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement." *Id.* at 242. Depriving the insurer of this contractual right constitutes a material breach, or prejudice*. Id.*

Here, as in *Motiva*, AEIC's summary judgment evidence establishes that AEIC was not consulted regarding ABC's and DHD's settlement of the City's and/or LLC's claims against ABC and DHD, had no settlement tendered to it by either ABC or DHD, and was not given any opportunity to participate in, or consent to, any ultimate settlement decision. Rather, ABC and DHD unilaterally settled the City's and LLC's claim against them without any notice to AEIC. When ABC filed suit against DHD and AEIC in August 2009, liability for the alleged defective concrete work had already been admitted by ABC and DHD, a settlement of LLC's and/or the City's claims had been struck, and the costs for remediation had been incurred. AEIC received *no* benefit from the policy provisions it had bargained for in order to limit its liability.

Furthermore, since its insureds had already admitted liability and the cost of their remediation was quantified with no opportunity for AEIC to lessen its financial exposure through the policy's provisions, the subsequent default judgment entered against DHD in ABC's suit was simply *pro forma.* Prior to its entry, ABC and DHD had "wholly deprived [AEIC] of its ability to defend" against the claims asserted by the City and/or LLC. *See Maryland Casualty Co.,* 277 S.W.3d at 117-18 (collected cases cited therein).

9

*See also Coastal Ref. & Mktg., Inc.,* 218 S.W.3d at 287 ("entry of default judgment will ordinarily constitute prejudice as a matter of law"). Under these circumstances, we find that AEIC's summary judgment evidence established AEIC suffered prejudice as a matter of law. *Motiva*, 445 F.3d at 386; *Maryland Casualty Co.*, 277 S.W.3d at 117.

Because AEIC conclusively established the applicability of an exclusion that would permit it to deny coverage, the burden shifted to ABC and, in order to defeat AEIC's summary judgment motion, ABC necessarily had to adduce evidence establishing a genuine issue of material fact as to whether AEIC was prejudiced. *See Coastal Ref. & Mktg., Inc.*, 218 S.W.3d at 295 (no prejudice for breach of a consent-to-settle provision where insurer was aware of lawsuit and continuing settlement negotiations before the settlement but did not participate); *Comsys Information Technology Services, Inc. v. Twin City Fire Insurance Co.*, 130 S.W.3d 181,191-92 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (no prejudice for breach of a consent-to-settle provision where insurer was invited to mediation and chose not to participate in settlement negotiations). Here, ABC produced no summary judgment evidence establishing AEIC was aware of, or invited to participate in, any ongoing settlement negotiations between ABC, DHD, the City or LLC prior to, or during, replacement of the concrete apron between January and March 2009. Moreover, there was no "suit" regarding LLC's and/or the City's claims whatsoever until August 2009 when ABC filed suit against DHD and AEIC--nearly five months after ABC and DHD had settled with LLC and/or the City and incurred the cost of replacing the apron. Accordingly, we find that ABC failed to raise a genuine issue of material fact as to whether ABC and DHD breached the consent-to-settle provision and/or whether an

exception existed as to AEIC's exclusion of coverage affirmative defense, to-wit: whether AEIC was not prejudiced by that breach.  ABC's two issues are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice